MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:        2026 ME 66
Docket:          Ken-26-308
Submitted
  On Briefs:     July 20, 2026
Decided:         July 22, 2026

Panel:           STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, LIPEZ, and TAUB, JJ.

DANIEL LANDERS

v.

SECRETARY OF STATE

PER CURIAM

[¶1]  Daniel Landers appeals from a decision of the Secretary of State finding that Albert Joy is qualified to be placed on the November 2026 ballot for the office of Sheriff of Knox County.  Landers argues that the Secretary of State erred in interpreting and applying the statute requiring as a qualification for the office of sheriff that the person have "at least 2 years of supervisory employment experience in law enforcement or corrections or a combination of both." 30-A M.R.S. § 371-B(3)(E) (2026).  He argues that the Secretary of State's decision was arbitrary given her decisions on other challenges and that she made findings not supported by substantial evidence in the record.  We affirm the Secretary of State's decision.

## I. BACKGROUND

[¶2] To appear on the general election ballot, a nonparty candidate must submit various filings to the Secretary of State by June 1 of the election year. 21-A M.R.S. §§ 354(8-A), 355 (2026). In addition to a petition containing a sufficient number of signatures supporting the candidacy, a candidate must submit a consent form in which the candidate declares, among other things, "that the candidate meets the qualifications of the office the candidate seeks." *Id.* § 355(3). The candidate must verify under oath that "the declaration is true." *Id.*

[¶3] Any registered voter who resides in the electoral division of the candidate may, within five business days after the final date for filing petitions, file a challenge contesting the validity of the petition, including the veracity of a candidate's declarations on the consent form. 21-A M.R.S. §§ 1(16), 355(3), 356(2) (2026). Once a challenge is filed, the Secretary of State must hold a hearing within five business days of the challenge deadline and rule on the challenge within five business days after the hearing. *Id.* § 356(2)(B)-(C). "The challenger has the burden of providing evidence to invalidate the petitions or any names upon the petitions." *Id.* § 356(2)(B). "If . . . any part of the declaration

is found to be false by the Secretary of State, the consent and the nomination petition are void." *Id.* § 355(3).

[¶4]  We draw the relevant facts on appeal from the record of the proceedings before the Secretary of State and from the Secretary of State's final decision and the portions of the presiding officer's recommended decision that the Secretary of State adopted, to the extent that the findings are supported by evidence in the record.  *See Caiazzo v. Sec'y of State*, 2021 ME 42, ¶ 16, 256 A.3d 260.

[¶5]  Albert Joy is a nonparty candidate for the office of Sheriff of Knox County.  On May 7, 2026, Joy submitted to the Secretary of State a petition along with the required consent form attesting to his qualifications for that office.  As relevant here, the consent form declared, pursuant to 30-A M.R.S. § 371-B(3)(E),

> I further swear or affirm that I have at least two years of supervisory employment experience in law enforcement or corrections or a combination of both and have submitted the name, address and telephone number of the relevant employer or employers.

As required by section 355(3), he swore "that this declaration is true." Attached to the consent form were a letter from a representative of the Chattanooga Housing Authority Police Department confirming that Joy "completed over two

years of supervisory experience while employed with the Chattanooga Housing Authority Police Department" and the State of Tennessee's certification of Joy as a law enforcement officer.

[¶6]  Daniel Landers is a deputy sheriff with the Knox County Sheriff's Office and a registered voter in Knox County.  On June 1, 2026, Landers filed a challenge to two of Joy's qualifications as a candidate for office of sheriff. *See* 21-A M.R.S. § 356(2)(A).  First, he alleged that Joy had not been properly certified by the Maine Criminal Justice Academy as currently or previously certified as a law enforcement officer.  *See* 30-A M.R.S. § 371-B(3)(D).  Second, Landers contested the veracity of Joy's statement that he had "at least two years of supervisory employment experience in law enforcement or corrections or a combination of both."  *See* 30-A M.R.S. § 371-B(3)(E).

[¶7]  The Secretary of State set a hearing for the challenge to be held on June 11, 2026, and assigned the Chief Deputy Secretary of State to serve as the presiding officer.  *See* 21-A M.R.S. § 356(2)(B); 5 M.R.S. § 9062(1) (2026) ("An agency may authorize any agency member, employee or agent to act as presiding officer in any hearing.").  At the hearing, Landers attempted to call Joy as a witness, but Joy was not under subpoena and refused to testify.  *See* 5 M.R.S. § 9060 (2026).  Counsel for the presiding officer explained to Joy that his refusal

to answer questions could create a negative inference against him. Joy nonetheless declined to answer any questions, stating, "I believe that the witnesses that I will call are going to provide all the evidence that I need for my case and so with that, I still decline."

[¶8] Landers then offered testimony from the Chief Deputy of the Knox County Sheriff's Office and his own testimony as a deputy in that office. Joy did not testify but called two witnesses from his prior employment—Felix Vess, the Chief of the Chattanooga Housing Authority Police Department, and Giuseppe Trancone, a former Chattanooga Police Department law enforcement officer who also worked as a contract officer under Joy in the Housing Authority Police Department. Both testified as to Joy's supervisory employment experience at the Housing Authority Police Department.

[¶9] Vess testified that Joy, who was formerly employed as a certified law enforcement officer with the Chattanooga Police Department, was hired for the position of Criminal Investigator I with the Chattanooga Housing Authority Police Department in 2016. In that position, Joy supervised between five and eight of the twenty contract officers working for the Chattanooga Housing Authority Police Department. One of his principal duties was to "manage and supervise those employees to actually tell them what to do on a daily basis."

Vess testified that the contract officers were typically law enforcement officers from another law enforcement agency or retired officers who worked part-time for the Housing Authority Police Department; they were required to submit a daily report "signed off by the criminal investigators that are in charge of them each day." Although Joy did not have the ultimate authority to hire, fire, or discipline the contract officers, he did make recommendations regarding those actions to the Chief. Vess testified that there were no full-time employees on the Housing Authority Police Department organizational chart inferior to Joy's position as Criminal Investigator.

[¶10] Officer Trancone testified that he worked as a law enforcement officer for the Chattanooga Police Department from 2013 to 2023 and for eight of those years also worked as a part-time contract officer for the Housing Authority Police Department. He testified that as a contract officer, he worked under Joy's direct supervision, that Joy assigned him shifts and directed his activities during shifts, and that Trancone was expected to follow Joy's directions. Both Vess and Trancone compared Joy's position to that of a sergeant, a position of "command rank" with oversight over other officers.

[¶11] Joy offered several exhibits, two of which were admitted without objection, including Exhibit 1, a job description for the Criminal Investigator I

position he held with the Chattanooga Housing Authority Police Department.[1] The job description lists thirty-three "[e]ssential [d]uties and [r]esponsibilities," two of which involved supervisory responsibilities: (1) "Oversees and supervises the Resident Greeter Program, contract law enforcement officers and provides management oversight training and guidance to all staff assigned to the program," and (2) "Provides supervision and guidance to Criminal Investigators I and II."[2]

---

[1] Joy's Exhibit 2, also admitted, was a June 8, 2026, letter from Vess describing the qualifications and responsibilities of the Criminal Investigator I position held by Joy. It states, in part:

> The Criminal Investigator I position requires three to five years of law enforcement experience. This requirement exists because the role is responsible for supervising contract officers from other law enforcement agencies who, in many cases, have greater tenure and hold ranks including Police Officer, Detective, Sergeant, Lieutenant, and, at times, Captain. The Criminal Investigator I is responsible for scheduling, managing time sheets, submitting payroll, and directing patrols for the contract officers. In 2016, the Chattanooga Housing Authority Police Department had approximately 20 law enforcement officers on contract.
>
> . . . . Many times during [Joy's] employment, he served as the senior officer in charge and made supervisory decisions in the absence of the Chief of Police or the Captain. During his normal working shifts, he provided supervision and guidance to less-experienced CHA Criminal Investigators, ensuring they received the necessary authorization and clear instructions to perform their duties effectively[.]

[2] Other duties and responsibilities included, for example, conducting investigations, securing criminal background checks, documenting criminal activity or other behavior violating Housing Authority policy, providing various reports, conducting physical and electronic surveillance, reviewing activity reports pertaining to police and security guards, appearing at court hearings, developing plans and policy recommendations for a security program involving contracted personnel, securing crime scenes and collecting evidence, conducting internal affairs complaints on certified law enforcement officers, and conducting investigations of allegations of misconduct by Housing Authority employees.

8

[¶12] The presiding officer issued a recommended decision on June 16, 2026, rejecting Landers's challenge to Joy's current or previous certification as a law enforcement officer but concluding that Landers "met his burden under 21-A M.R.S. § 356(2)(B) to provide sufficient evidence to find that Candidate Joy's candidate consent form was invalid because he lacks the relevant supervisory employment experience required by 30-A M.R.S.A. § 371-B(3)(E)." Relevant here, she found that in the position of Criminal Investigator I at the Chattanooga Housing Authority Police Department, Joy did not hold rank and had no subordinates within that police department; that he had had only limited supervisory authority over contract officers, who were independent contractors providing services to, and were not employees of, the Housing Authority Police Department; and that Joy's supervisory responsibilities had been only a small part of what was a largely nonsupervisory position. She also drew a negative inference from Joy's refusal to answer questions, finding that if he had answered questions, those answers would not have been helpful to his case.

[¶13] The presiding officer concluded: "While credible evidence did indicate that this job included exercising some oversight over other officers, most notably over the contract officers that worked with Candidate Joy, I

nevertheless recommend concluding that this position was not 'supervisory employment experience' within the meaning of the statute." In reaching this recommendation, the presiding officer looked to two recent decisions of the Secretary of State involving similar challenges to candidates for sheriff in other counties and interpreted "supervisory employment experience," 30-A M.R.S. § 371-B(3)(E), based on the standard set by the Secretary of State, who required the evaluation of whether the candidate's "*positions* were supervisory in nature, not whether [the candidate] exercised some de facto oversight over employees during his career." *In re Challenge to Nomination Petition of Nichols*, Final Decision 1, Recommended Decision 10-11 (Me. Sec'y of State June 10, 2026).

[¶14] Joy filed a timely objection to the recommended decision.

[¶15] The Secretary of State issued her final decision on June 18, 2026. The Secretary of State agreed with the findings and analysis of the presiding officer concluding that Joy met the certification requirement in 30-A M.R.S. § 371-B(3)(D) but "conclude[d] that Mr. Joy did not make a false statement in affirming that he met the requirement of at least 2 years of supervisory employment experience in law enforcement given [his] tenure as a Criminal Investigator at the Chattanooga Housing Authority." *See id.* § 371-B(3)(E). The

Secretary of State noted that the question of whether Joy had the requisite supervisory experience was "a closer one" and indicated that a "clearer statutory definition" of "supervisory employment experience" from the Legislature might "avoid the frequency of challenges that we have experienced in 2026." She nevertheless interpreted the statute to provide an "objective test that allows for consistent and uniform application across candidacies." (Quotation marks omitted.)

[¶16] Based on the record evidence, and in particular the job description of the Criminal Investigator I, the Secretary of State determined that Joy held a position requiring "formal supervision of personnel," a finding that she concluded satisfied a suitable interpretation of "supervisory employment experience," 30-A M.R.S. § 371-B(3)(E), for purposes of administering the election laws that are consigned to the Secretary of State's oversight. The Secretary of State concluded that the test is one of "supervision of not just tasks or situations, but personnel," and she distinguished Joy's supervisory experience from the nonsupervisory experience that she had considered in earlier challenges to other sheriff candidates' qualifications. She did not consider it material that Joy was supervising independent contractors as opposed to subordinate employees and found that although Joy's refusal to

answer questions was "troubling," the job description and his witnesses' testimony overcame any adverse inference that may be drawn from the refusal to testify, particularly when the challenger—not the candidate—bears the burden of proof.

[¶17]  On June 24, 2026, Landers timely appealed from the Secretary of State's decision pursuant to a new appeal process enacted by the Legislature, which provides for a direct appeal to this Court and requires that we issue a decision within thirty-five days of the Secretary of State's decision.[3]  21-A M.R.S. § 356(2)(E)(5); *see* P.L. 2025, ch. 397, § 25 (effective Sept. 24, 2025).  We have received and considered briefs from the parties—Landers, Joy, and the

---

[3]  Before taking the appeal, Landers, on June 23, 2026, alleging that the Secretary of State was biased, moved for her to vacate her final decision, recuse herself, and reassign the matter.  Because the Secretary of State had not ruled on the motion by the time the notice of appeal was filed, on July 1, 2026, Landers filed a motion in this Court requesting that the matter be remanded to the Secretary of State for the taking of additional evidence on the issues raised by the post-hearing motion filed with the Secretary of State.  On July 2, 2026, we denied his motion for the taking of additional evidence and ordered the Secretary of State to rule on Landers's motion pending before her.  On July 8, 2026, the Secretary of State issued an order denying Landers's motion, indicating that although she had interacted with Joy professionally in his capacity as a member of the Technical Review Panel of the Bureau of Motor Vehicles, that did not render her biased; that her earlier agreement to speak with Joy about an issue with his candidacy was an ordinary response to a prospective candidate's inquiry and, in any event, they never spoke by phone and had no communication beyond the disclosed email thread; and that Joy's post-hearing, ex parte email asking that she consider Vess's testimony had no impact on her decision because she had finalized the decision before reading the email.  Landers has not raised any issue relating to the denial of his motion.  Landers also made a request under the Maine Freedom of Access Act (FOAA), 1 M.R.S. §§ 400-414 (2026), for, among other things, information about the timing of the Secretary of State's decision making.  The Secretary of State denied the request as improperly inquiring about her mental process as a decision maker; to our knowledge, no appeal was taken from this denial.

Secretary of State—as well from the Maine Sheriffs Association as amicus curiae.

## II. DISCUSSION

[¶18]  Landers argues that (A) the Secretary of State misinterpreted and misapplied the statute requiring two years or more of "supervisory employment experience," 30-A M.R.S. § 371-B(3)(E), particularly in light of her other decisions on similar challenges this year; and (B) the record contained insufficient evidence to support her finding that Joy satisfied the statute's requirement.[4]

[¶19]  "Any aggrieved party may appeal the decision of the Secretary of State to the Law Court, on questions of law . . . ."  21-A M.R.S. § 356(2)(E); *see also* 4 M.R.S. §§ 51, 57 (2026) (establishing the constitution and jurisdiction of the Law Court in deciding questions of law).  Questions of law, for purposes of our appellate review, include questions of statutory interpretation and questions regarding whether there was substantial evidence in the administrative record to support findings of fact.  *See Caiazzo*, 2021 ME 42,

---

[4] Landers does not argue that the Secretary of State was required to defer to the presiding officer's findings of fact.  Furthermore, although Landers raised other issues during the proceedings before the Secretary of State, such as Joy's qualification under 30-A M.R.S. § 371-B(3)(D) (requiring one of two specified certifications from the Maine Criminal Justice Academy), he has narrowed his challenge on appeal.  Thus, we consider only the Secretary of State's interpretation and application of section 371-B(3)(E) and her findings reached in determining Joy's qualification under that paragraph, and do not address Joy's qualification under section 371-B(3)(D).

¶ 16, 256 A.3d 260; *cf. Pub. Advoc. v. Pub. Utils. Comm'n*, 655 A.2d 1251, 1253 (Me. 1995) (stating that, in our direct review of "questions of law" in a Public Utilities Commission decision, we "accept[] . . . findings of facts as final if they are supported by substantial evidence on the record"). "Substantial evidence" is "any competent evidence in the record." *Ellsworth ME Solar, LLC v. Pub. Utils. Comm'n*, 2026 ME 10, ¶ 20, 353 A.3d 952.

## A.    Interpretation of Section 371-B(3)(E)

[¶20]  In the absence of ambiguity in a statute, we construe the statute de novo as a matter of law based on the plain meaning of the words of the statute "to give effect to the intent of the Legislature." *Caiazzo*, 2021 ME 42, ¶ 16, 256 A.3d 260 (quotation marks omitted). "We interpret the statute according to its unambiguous meaning if the plain language is not reasonably susceptible to different interpretations." *Id.* (quotation marks omitted). Thus, as we review the Secretary of State's determination of whether Joy truthfully swore to his qualifications, *see* 21-A M.R.S. §§ 355(3), 356(2); 30-A M.R.S. § 371-B(3)(E), we construe the statute defining a candidate's qualifications to give effect to the Legislature's chosen language and what it conveys to a candidate who seeks to comply with the statutory requirements, *see Caiazzo*, 2021 ME 42, ¶ 16, 256 A.3d 260.

14

[¶21]  At issue here is 30-A M.R.S. § 371-B, which governs the selection and qualifications of county sheriffs.  It provides, in relevant part,

> **3.  Minimum qualifications for officers.**  A person may not be appointed to the office of sheriff, be a candidate for election to the office of sheriff or serve as sheriff of any county in the State unless the candidate meets the following qualifications:
>
> . . . .
>
> **E.** The candidate swears to or affirms that the candidate has at least 2 years of supervisory employment experience in law enforcement or corrections or a combination of both and submits the name, address and telephone number for the relevant employer or employers.

*Id.* § 371-B(3)(E).  Landers challenges the Secretary of State's determination of what "supervisory employment experience" means.  *Id.*

[¶22]  With no statutory definitions to guide us, *cf.* 30-A M.R.S. § 351 (2026) (providing definitions for terms in the subchapter on sheriffs and officers but not for the terms at issue here), we look to the ordinary dictionary meaning of the term "supervisory," *see Cassidy Holdings, LLC v. Aroostook Cnty. Comm'rs*, 2023 ME 69, ¶ 12, 304 A.3d 259.[5]  "Supervisory" means "of or relating to supervision."  *Supervisory*, Webster's Third New Int'l Dictionary of the

---

[5]  The Legislature made no indication that it intended to import definitions established under federal or state labor laws, and we construe the words in the statute based on their common meaning. *Cf.* 29 U.S.C.A. § 152(11) (West, Westlaw through Pub. L. No. 119-100) (National Labor Relations Act); 26 M.R.S. § 966(1) (2026) (Municipal Public Employees Labor Relations Law); 26 M.R.S. § 1022(9) (2026) (University of Maine System Labor Relations Act).

English Language Unabridged (2002). "Supervision" is "the act, process, or occupation of supervising," "direction, inspection, and critical evaluation," or "OVERSIGHT, SUPERINTENDENCE." *Supervision*, Webster's Third New Int'l Dictionary of the English Language Unabridged. Black's Law Dictionary similarly defines supervision as "[t]he series of acts involved in managing, directing, or overseeing persons or projects." *Supervision*, Black's Law Dictionary (12th ed. 2024).

[¶23] To "supervise" is "to coordinate, direct, and inspect continuously and at first hand the accomplishment of," "oversee with the powers of direction and decision the implementation of one's own or another's intentions," or "SUPERINTEND," *Supervise*, Webster's Third New Int'l Dictionary of the English Language Unabridged; "[t]o manage and direct; be in charge of," American Heritage Dictionary of the English Language (5th ed. 2016); or to "observe and direct the work of (someone)," New Oxford American Dictionary (3d ed. 2010).

[¶24] There is nothing in the meaning of the word "supervisory" that requires such things as a specific rank or title in a chain of command, the power to hire or fire, or the right to determine what discipline will be imposed. The term also does not implicitly require any specific employment relationship. However, in the context of 30-A M.R.S. § 371-B(3)(E), because the term

16

"employment" plainly modifies the word "experience," the statute requires that the supervision that the candidate provided was the candidate's job responsibility. The statute imposes no requirement that the supervision have been of direct employees of the same employer. The Secretary of State therefore did not err in interpreting the statute, based on its plain meaning, to include a broader range of supervisory experience than Landers proposes.

[¶25] The Secretary of State's application of the statute is in line with the two other decisions she made this year. In the first of those decisions, issued in April, she accepted the presiding officer's recommended decision finding that a candidate "never held a law-enforcement or corrections position in which he exercised supervisory authority over subordinate personnel," noting that "supervisory employment experience" pertains to supervision of individuals and "managing personnel," not providing supervision over situations. *In re Challenge to Nomination Petition of Corbett*, Final Decision 1, Recommended Decision 5-6 & n.1 (Me. Sec'y of State April 3, 2026). There, the Secretary of State nonetheless found that the candidate was qualified for the ballot because of an applicable exception from the requirements of section 371-B(3). *Id.* Recommended Decision 6-7; *see* 30-A M.R.S. § 371-B(4).

[¶26]   In the second decision, issued in June, the Secretary of State adopted the presiding officer's finding that a candidate lacked the necessary years of "supervisory employment experience" when his positions—all held in Maine—were at the bottom of the chain of command with limited additional responsibilities as a field training officer and jail unit manager to provide guidance, insight, and support to peers and trainees and to evaluate and make nonbinding recommendations about whether trainees should be retained, terminated, or receive further training.  *In re Challenge to Nomination Petition of Nichols*, Final Decision 1, Recommended Decision 4-7.   Although the Secretary of State interpreted section 371-B(3)(E) to require formal employment "in a position that required supervision of subordinate *employees* as part of the position's responsibilities" and not just the exercise of "some de facto oversight of other *employees*," *id.* Recommended Decision 10-11 (emphasis added), there was no reason in that case to consider the supervision of independent contractors.  The *Nichols* decision focused on "the nature of the positions held" and concluded that although the candidate had had responsibility to "make sure that trainees do not get hurt, hurt others, or violate constitutional rights of others," the employment experience did not require the supervision of subordinate personnel.  *Id.* at 12-13.

[¶27]   In contrast to the circumstances in *Corbett* and *Nichols*, the Secretary of State found here that a Criminal Investigator for the Chattanooga Housing Authority Police Department—who "[o]versees and supervises the Resident Greeter Program, contract law enforcement officers and provides management oversight training and guidance to all staff assigned to the program" and "[p]rovides supervision and guidance to Criminal Investigators I and II"—gains "supervisory employment experience" in that capacity.   The testimony of Joy's witnesses supports that supervision of contract officers was a core function of Joy's job and that Joy performed the described supervisory job functions for more than two years.   His supervisor, Vess, testified that one reason for creating the Housing Authority Police Department was the need for full-time officers to supervise contract officers who predominantly worked for other law enforcement agencies and sometimes held high ranks in those agencies but had to be under the supervision of the Housing Authority Police Department in the supplemental contract work.   Vess also testified that the Housing Authority Police Department's use of contract officers differs from the typical chain of command used in most law enforcement agencies, but both Vess and Trancone view the role that Joy played as comparable to that of a supervising sergeant.   Joy, Vess testified, had the responsibility to sign off on

daily logs and to recommend and, if approved by his supervisor, mete out some types of discipline. Because the evidence supports the Secretary of State's finding that Joy's position differed from Nichols's position in that the supervision of personnel, not the supervision of tasks, was a core job function, she did not err in reaching a result here different from the result in *Nichols*.[6]

## B.    Review of Secretary of State's Findings

[¶28]  Turning then to the Secretary of State's factual findings, we review the findings to determine whether they are supported by substantial evidence in the record. *See* 21-A M.R.S. § 356(2)(E); *Caiazzo*, 2021 ME 42, ¶ 16, 256 A.3d 260; *cf. Pub. Advoc.*, 655 A.2d at 1253. We conclude that the Secretary of State properly exercised her independent statutory authority in finding the facts, *see* 21-A M.R.S. § 356(2)(C), and did not err in weighing the evidence, including any negative inference that may be drawn from Joy's refusal to testify, in determining that the evidence presented by Landers was insufficient to demonstrate Joy's disqualification and invalidate his petition, *see id.*

---

[6] Because an exemption from the requirements of 30-A M.R.S. § 371-B(3) applied in *Corbett*, the Secretary of State did not make detailed findings in her decision on that challenge that warrant comparison here. *In re Challenge to Nomination Petition of Corbett*, Recommended Decision 4-7. Furthermore, as we have concluded that the Secretary of State's ruling comports with her prior rulings, she did not change her mind in her interpretation of a statute and had no obligation to, as Landers contends, "acknowledge that [she was] making a change, explain why, and give due consideration to the serious reliance interests on the old policy." *Cassidy Holdings, LLC*, 2023 ME 69, ¶ 16 n.4 304 A.3d 259 (quotation marks omitted).

§ 356(2)(B).  Even if Joy's testimony is presumed to be adverse to his position, there is still substantial evidence in the record that supports the Secretary of State's decision.

The entry is:

> Decision of the Secretary of State finding Albert
> Joy qualified to be on the ballot affirmed.

---

Christopher K. MacLean, Esq., Dirigo Law Group LLP, Camden, for appellant Daniel Landers

Aaron M. Frey, Attorney General, and Jonathan R. Bolton, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Secretary of State

Albert F. Joy, appellee pro se

David B. Joyce, Esq., and Michael E. Carey, Esq., Brann & Isaacson, Lewiston, for amicus curiae Maine Sheriffs Association

Secretary of State agency docket number SOS-26-004
FOR CLERK REFERENCE ONLY